THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Respondent, *v.* CAMILLA HUNT, a Lunatic, and others, Appellants.

*Insanity — when not a defense to an action on contract.*

Where a person, upon borrowing money, executes for a full and valuable consideration, a bond and mortgage to secure the repayment thereof without fraud or unfairness, without any knowledge on the part of the lender of the borrower's insanity, and without any notice or information thereof sufficient to call for inquiry (the insanity of such person not having been established by any inquisition), the fact that such person was in fact insane at that time furnishes no defense to an action to foreclose the mortgage.

Appeal from a judgment in favor of the plaintiffs, entered upon the trial of this action by the court without a jury.

*Robert P. Harlow*, for the appellants, Camilla Hunt and Edward P. Wilder, her committee. The plaintiff is bound to prove that the mortgagor was sane at the *very time* the mortgage was given. (*Jackson* v. *Von Dusen*, 5 John's, 159, marg. p.; *Attorney-General* v. *Parnther*, 3 Bro. Ch. R. [Am. ed., 1844), 441, 443, 445; *White* v. *Wilson*, 13 Ves., 88; *Hall* v. *Warren*, 9 Ves., jr., 611; 1 Story's Eq. Jurisp. [12th ed.], 219, § 222; *Haviland* v. *Hayes*, 37 N. Y., 33; *Goddell* v. *Harrington*, 3 T. & C. [N. Y. Sup. Ct. R.], 345.) In dealing with *any person* it is the duty of both contracting parties to use care. They deal at their peril. If a person deals with an infant he deals at his peril, though the infant is apparently of age. It is the same with insane persons. (*Wadsworth* v *Sharpstein*, 8 N. Y., 393· *Seaver* v. *Phelps*, 11 Pick., 304.)

*Winchester Britton*, for the respondent. An executed contract made with a lunatic in good faith for a full consideration, without advantage taken of the lunatic, without knowledge of the insanity, and without such information as would lead a prudent person to a belief of the incapacity, and when there has been no finding of insanity by a commission *de lunatico inquirendo*, will be enforced as against the lunatic. (*Lincoln* v. *Buckmaster*, 32 Vt.,

52; *In the Matter of Beckwith*, 3 Hun, 443; *Matthiesson* v. *McMahon*, 38 N. J. L., 536; *Beaven* v. *McDonnell*, 9 Exch., 309; 23 L. J. Exch., 94; 2 C. L. R., 474; *Sims* v. *McLure*, 8 Richardson Eq., 286; *Dane* v. *Kirkwell*, 8 Carr. & Payne, 679; *Lancaster Co. Bk.* v. *Moore*, 78 Penn., 407; 21 Am. R., 24; *Beals* v. *See*, 10 Barr., 56; Addison on Contracts [6th ed.], 1033–4; 2 Kent's Commentaries, 451, note 1; *Molton* v. *Camroux*, 2 Exch., 501; *Elliott* v. *Ince*, 7 DeG. M. & G., 475; *Wilder* v. *Weakley*, 34 Ind., 181; *Younger* v. *Skinner*, 1 McCarter, 389.) This liability is upheld, not because of the validity of the contract as such, but because the lunatic has received and enjoyed the benefit of the agreement. (*Brown* v. *Jodrell*, 3 C. & P., 30; *Neill* v. *Morley*, 9 Vesey, 447; *Younger* v. *Skinner*, 1 McCarter, 389.) When the contract is void because of insanity, it is only when one has wholly lost his understanding—is absolutely *non compos mentis*. The question is, did he know what he was about when he entered into the obligation. (*Osterhout* v. *Shoemaker*, 3 Denio, 37, *note*; cited 14 Barb., 494; Willard's Eq. Juris., 675; *Blanchard* v. *Nestle*, 3 Denio, 37; *Neill* v. *Morley*, 9 Vesey, 478; *Lancaster Co. Bk.* v. *Moore*, 78 Penn. St., 407; 21 Am. R., 24; *Odell* v. *Buck*, 21 Wend., 142; *Van Deuser* v. *Sweet*, 57 N. Y. R., 379.) Where a contract is impeached *solely* on the ground of incapacity of one of the parties to it, and without charge of fraud, the test of such capacity is the ability of such party to comprehend in a reasonable manner the nature of the particular transaction. Proof of delusion on independent subjects is not enough. (*Sozear* v. *Shields*, 23 N. J. Eq., 509.) Absolute soundness of mind is not necessary to make a valid conveyance. It is sufficient if the mind comprehend the import of the particular act. (*Hovey* v. *Hobson*, 53 Me., 256; *Miller* v. *Craig*, 36 Ill., 109; *Speers* v. *Sewell*, 4 Bush., 239; *Dennett* v. *Dennett*, 44 N. H., 531; *Rippy* v. *Gaunt*, 4 Fred., 443.)

DYKMAN, J.:

This action is brought to foreclose a mortgage executed to the plaintiff by the defendant, Hunt, as security for a loan of four thousand dollars in money. The loan was made on the 23d day of April, 1870, and the mortgage bears date on that day.

On the 21st day of October, 1871, it was found on an inquisition of lunacy that the mortgagor was of unsound mind, and had been so, without lucid intervals, for twelve years. The defense of lunacy is now interposed to this action, and it is claimed that the mortgage cannot be enforced because the mortgagor was of unsound mind at the time of its execution.

A trial has been had at Special Term, and the court has found that the defendant was of sound mind at the time of the execution of the mortgage, and has given judgment for the plaintiff. On this appeal we are asked to revise the judgment on the facts, and there is no doubt concerning our power to do so if it is against the evidence. Conceding, without now deciding, that the finding of the trial court is erroneous, and that the defendant was, in fact, a lunatic at the time she borrowed the money of the plaintiff, and gave back the bond and mortgage to secure its payment; it does not yet follow, by any means, that this judgment must be reversed.

All the transactions of this lady with the agents of the plaintiff, in relation to the loan and the execution of the papers, evinced a clearness of intellect and a directness of purpose entirely in accord with the assumption upon which they acted, that she was in the full possession of all her faculties. Nothing occurred to excite suspicion or place them on their guard. It would be not only a startling proposition, but also in our judgment, an innovation upon well settled principles that loans of money are made and securities taken upon the risk of losing the money if it turns out afterwards that the borrower was then insane, though nothing had then made it manifest, and he himself was unconscious of the fact.

The human mind is wonderfully made, and the partition between sanity and insanity oft-times very thin. Upon inquest, men are sometimes found to have been insane for years, who during all the time have been engaged in all the business complication, of every day life. If all their acts during the period must be reversed and go for nothing, the upheaval will be very great and much hardship must result. Upon plain view there seems to be no propriety in any such rule, and there is no principle of law or equity calling for its adoption.

Here we have the case of an executed contract with the

lunatic of which she has taken the benefit, made in good faith, for a full valuable consideration, without fraud or unfairness, without knowledge of the insanity and without notice or information calling for inquiry, and before the insanity was found by the inquisition— every principle of justice requires that it should be sustained. It would be derogatory to the law, if after obtaining the money from the plaintiff and using it for her own benefit, she should now be allowed to defeat the securities which she gave for the repayment. There is no authority which requires us to hold any such doctrine, and there is abundant to the contrary we do not deem it necessary to examine.

The judgment must be affirmed with costs.

Present — BARNARD, P. J., and DYKMAN, J.

GILBERT, J., not sitting.

Judgment affirmed with costs.